ORIGINAL

EDWARD H. KUBO, JR.   #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Narcotics Section

CHRIS A. THOMAS        #3514
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: Chris.Thomas@usdoj.gov

Attorney for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 0 8 2006

at ___ o'clock and ___ min ___M
SUE BEITIA, CLERK


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00190-03 JMS |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OF PLEA AGREEMENT |
| vs. | ) | |
| | ) | |
| CHANDRA POUNDS,        (03) | ) | DATE:  February 8, 2006 |
| | ) | TIME:  2:30 p.m. |
| Defendant. | ) | JUDGE: Honorable Kevin S. C. |
| | ) |        Chang |
| | ) | |

MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal

Procedure, the UNITED STATES OF AMERICA, by its attorney, the

United States Attorney for the District of Hawaii, and the

defendant, CHANDRA POUNDS (hereinafter "Defendant"), and her

attorney, Todd Eddins, Esq., based upon the following:

1. Defendant acknowledges that she is charged in an Indictment in Cr. No. 05-00190 JMS, with one (1) count of a violation of Title 21, United States Code, Section 846 (Count 1 - Conspiracy to possess with intent to distribute in excess of fifty (50) grams of methamphetamine); and one count of a violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A) (Count 2 - Possession with intent to distribute in excess of fifty (50) grams of methamphetamine).

2. Defendant has read the charges against her as contained in the Indictment, and the charges have been fully explained to her by her attorney.  In making her decision to plead guilty to Count 1 of the Indictment, Defendant has had ample opportunity to consult with her undersigned defense attorney, and Defendant is satisfied with the legal advice and representation of her defense attorney.

3. Defendant fully understands the nature and elements of the crimes with which she has been charged.

4. Defendant will enter a voluntary plea of guilty to Count 1 of the indictment in this case.  In return, the government will move to dismiss Count 2 of the Indictment against Defendant after sentencing in this case.

5. Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.    Defendant enters this guilty plea because she is in fact guilty of conspiracy to possess with intent to distribute in excess of fifty (50) grams of methamphetamine.  Defendant further agrees that her guilty plea to Count 1 of the indictment is voluntary and not the result of force or threats.

7.    Defendant understands that the penalties for the offense to which she is pleading guilty is as follows:

        a.    A mandatory minimum term of imprisonment of ten years and up to life;

        b.    A fine of up to $4,000,000; and

        c.    A term of supervised release of not less than ten years and up to life;

        Defendant must also pay a $100 special assessment as to each count to which she is pleading guilty.[1]  Defendant agrees to pay the $100 for the count to which she is pleading guilty to the United States District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing.  Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

---

    [1]  The $100 special assessment is mandatory pursuant to Title 18 U.S.C. § 3013(a)(2)(A).

At the discretion of the court, defendant may also be denied any or all federal benefits, as that term is defined in 21 USC §862, (a) for up to five years if this is defendant's first conviction of a federal or state offense consisting of the distribution of controlled substances, or (b) for up to ten years if this is defendant's second conviction of a federal or state offense consisting of the distribution of controlled substances. If this is defendant's third or more conviction of a federal or state offense consisting of the distribution of controlled substances, the defendant is permanently ineligible for all federal benefits, as that term is defined in 21 USC §862(d).

8.    Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charges to which defendant is pleading guilty:

a.    In mid-April of 2005, Defendant POUNDS was recruited to transport methamphetamine from California to Hilo. A male in California by the name of "Eli" or "E" made all of the arrangements for her trip. The day prior to her trip Defendant POUNDS stayed at a hotel in Oakdale, California. The following day, Eli picked her up at the hotel and gave her approximately one pound of methamphetamine to transport to Hawaii. Defendant POUNDS transported the methamphetamine on her body.

      b.    Defendant POUNDS flew to Hawaii from California on May 5, 2005. Upon her arrival in Hilo, Hawaii, Defendant POUNDS followed the instructions of "Eli" and proceeded to the Uncle Billy's Hilo Bay Hotel in Hilo, Hawaii and went to room number "G-31". Defendant POUNDS met co-defendant Alfred NOBRIGA in room number G-31 and delivered the pound of methamphetamine to co-defendant NOBRIGA.

      c.    Defendant POUNDS and co-defendant NOBRIGA left the Uncle Billy's Hilo Bay hotel and co-defendant NOBRIGA dropped Defendant POUNDS off at a local shopping mall.

      d.    Co-defendant NOBRIGA later picked up defendant POUNDS from the shopping mall and drove into a gas station located across the street from the shopping mall. Law Enforcement Officers approached co-defendant NOBRIGA and defendant POUNDS at the gas station.

      e.    Shortly thereafter, a canine screen on NOBRIGA's vehicle resulted in an alert for the presence of a controlled substance on the open passenger-side door. Officers later recovered, among other things, approximately 466 grams of methamphetamine in NOBRIGA's vehicle.

      f.    Defendant POUNDS, after being advised of her rights, stated that she was hired by an individual in California, known to her as "Eli or "E", and agreed to transport approximately one pound of methamphetamine from California to

Hawaii for $2,000.  Defendant POUNDS stated that upon her arrival

she gave the pound of methamphetamine to co-defendant NOBRIGA.

Defendant Pounds stated that the drugs recovered from co-

defendant NOBRIGA's truck were the drugs that she transported

from California.  Defendant POUNDS stated that the individual in

California known to has as "Eli" or "E", has a close friend named

"JOSE" (later identified as co-defendant Jose DIAZ), who is also

involved in drug dealing.

        g.    The above described methamphetamine that was

possessed by Defendant POUNDS, and others, on May 5, 2005, was

analyzed by the Drug Enforcement Administration Southwest

Laboratory which resulted in a positive finding for

methamphetamine in the amount of 448.1 grams with a purity of

67%.

        9.    Pursuant to CrimLR32.1 of the Rules of the United States

District Court for the District of Hawaii, the parties agree that

the charges to which the defendant is pleading guilty adequately

reflects the seriousness of the actual offense behavior and that

accepting this Agreement will not undermine the statutory

purposes of sentencing.

        In addition, pursuant to CrimLR32.1(b) of the Local

Rules of the United States District Court for the District of

Hawaii and Section 6B1.4 of the Sentencing Guidelines, the

parties stipulate to the following for the purpose of the

sentencing of Defendant in connection with this matter:

       a.    <u>Factual stipulations</u>:

           (1)  <u>Identification and Quantity of</u>
<u>methamphetamine</u>:

                (A)   The above described methamphetamine that was possessed by Defendant POUNDS, and others, on May 5, 2005, was analyzed by the Drug Enforcement Administration Southwest Laboratory which resulted in a positive finding for methamphetamine in the amount of 448.1 grams with a purity of 67%.

                (B) The amount of "methamphetamine (actual)", as this term is defined in Note B to the Drug Quantity Table in Guideline 2D1.1(c), contained in the subject parcel is at least 50 grams but less than 500 grams.

       b.   <u>Offense Level Stipulations</u>:

           (1)   Based upon the quantity of methamphetamine (actual) referenced in paragraph 9(A) above, the Base Offense Level as determined solely by the Drug Quantity Table would be "34".  <u>See</u> Guideline 2D1.1(c)(1) [at least 150 G or more but less than 500 G of methamphetamine (actual)].  However, because defendant is a "minor participant" within the meaning of Guideline 3B1.2(b) and eligible for a two-level reduction provided thereunder, defendant's Base Offense Level is "32".  <u>See</u> Guideline 2D1.1(a)(3).

c.  Prosecution recommendations:  Based upon
information presently known to the prosecution, as of the date of
the execution of this Agreement, the United States will not argue
at the time of sentencing of the defendant:

(1)  That defendant has not clearly demonstrated
acceptance of responsibility for the offense of conviction,
within the meaning of Guideline 3E1.1(a);

d.  The United States Attorney agrees that
Defendant's agreement herein to enter into a guilty plea
constitutes notice of intent to plead guilty in a timely manner,
so as to permit the government to avoid preparing for trial as to
Defendant.  Accordingly, the United States Attorney anticipates
moving in the Government's Sentencing Statement for a one-level
reduction in sentencing offense level pursuant to Guideline
3E1.1(b)(2), if defendant is otherwise eligible.

e.  With respect to paragraphs 9(C) and (D) above, the
defendant understands that notwithstanding its present
intentions, and still within the Agreement, the prosecution
reserves the rights (1) to argue to the contrary in the event of
receipt of new information relating to those issues, and (2) to
call and examine witnesses on those issues in the event that
either the probation office finds to the contrary of the
prosecution's intentions or the Court requests that evidence be
presented on those issues.

f.   In view of the aforesaid prosecution recommendations and the stipulation as to defendant's "minor participant" status, defendant shall not file any downward departure motion in connection with his sentencing.

10.   The defendant is aware that she has the right to appeal the sentence imposed under Title 18, United States Code, Section 3742(a).  Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in exchange for the concessions made by the prosecution in this Plea Agreement.

a.   The defendant also waives, except as indicated in subparagraph "b" below, her right to challenge her sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

b.   If the Court in imposing sentence departs (as that term is used in Part K of the Sentencing Guidelines) upward from the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the upward departure portion of her sentence and the manner in which

that portion was determined under Section 3742 and to challenge that portion of her sentence in a collateral attack; and

   c. The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

  11. The defendant understands that the District Court in imposing sentence will consult the provisions of the Sentencing Guidelines which are advisory.  Subject to the exceptions noted in the previous paragraph, the defendant is surrendering her right to challenge any sentence within the statutory maximum, or the manner in which it was determined, including, but not limited to, a sentence that the defendant perceives to be an incorrect application of the Guidelines.  The defendant further agrees that there is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

  12. The defendant understands that pursuant to Guideline 6B1.1(c), this Agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a Presentence Report, unless the Court decides that a Presentence Report is unnecessary pursuant to Guideline 6A1.1. The defendant understands that the Court will not accept an agreement unless the Court determines that the charges contained

in the Indictment adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

13. Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a. If defendant persisted in a plea of not guilty to the charges against him, she would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury;

b. If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt;

c.  If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt;

d.  At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant.  Defendant would be able to confront those prosecution witnesses and her attorney would be able to cross-examine them.  In turn, defendant could present witnesses and other evidence on her own behalf.  If the witnesses for the defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court; and

e.  At a trial, the defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify.

f.  The Defendant understands that she has a right to a jury determination, beyond a reasonable doubt, of the drug type and quantity as alleged in the indictment and that by pleading guilty she is giving up that right.

14.  Defendant understands that by pleading guilty, she is waiving all of the rights set forth in the preceding paragraph. Defendant's attorney has explained those rights to him and the consequences of the waiver of those rights.

15.    Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

16.    Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.  The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

17.    Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

18.    The defendant agrees that she will fully cooperate with the United States.

a.    she agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving co-defendants and others indicted later in the investigation, and related civil proceedings;

b.    Defendant agrees to be available to speak with law enforcement officials and to representatives of the United States

13

Attorney's Office at any time and to give truthful and complete answers at such meetings, but she understands she may have her counsel present at those conversations, if she so desires;

c.   Defendant agrees she will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crime in the Indictment or any subsequent charges related to this investigation at which the prosecution requests her to testify;

d.   Should any criminal prosecution be brought against Defendant by the U.S. Attorney's Office, the prosecution will not offer in evidence in its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by Defendant at any and all debriefing meetings related to this case, except in a prosecution for false statements, obstruction of justice, or perjury.  Notwithstanding the foregoing, Defendant understands that any information or testimony provided by Defendant may be used in furtherance of any civil forfeiture proceeding brought by the United States Attorney to obtain property which was proceeds of, or facilitated, Defendant's drug trafficking activity;

e.   Notwithstanding paragraph 18(d) above, the prosecution may use (i) information derived directly or indirectly from any and all debriefing meetings for the purpose of obtaining and pursuing leads to other evidence, which evidence may be used in any prosecution of Defendant by the prosecution,

14

and (ii) statements made by Defendant at any and all debriefing meetings and all evidence obtained directly or indirectly from those statements for the purpose of cross-examination should Defendant testify, or to rebut any evidence offered by or on behalf of Defendant in connection with the trial and/or at sentencing, should any prosecution of Defendant be undertaken;

f.   Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

g.   If, after entering this plea agreement, however, the Defendant makes a motion before the Court to withdraw from the plea agreement and the Court grants that motion, the Defendant agrees that any statement she makes to law enforcement agents or to the United States Attorney's Office may be used against her in a subsequent trial.  Defendant waives any protection afforded by Rule 11(e)(6) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made during the course of pleading guilty when the guilty plea is later withdrawn.

19.   In the event that the defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after defendant has made statements to law

15

enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case-in-chief in the trial of the defendant in this matter.  Defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

20.  Pursuant to Guideline Section 5K1.1 and Rule 35(b), Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.  Defendant understands that:

a.  The decision as to whether to make such a request or motion is entirely up to the prosecution.

b.  This Agreement does not require the prosecution to make such a request or motion.

c.  This Agreement confers neither any right upon the Defendant to have the prosecution make such a request or motion, nor any remedy to Defendant in the event the prosecution fails to make such a request or motion.

d.  Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines.

DATED:   Honolulu, Hawaii, _____ 2/8/06 _____ .

AGREED:


EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


CHANDRA POUNDS
Defendant


FLORENCE T. NAKAKUNI
Chief, Narcotics Section


TODD EDDINS
Attorney for Defendant


CHRIS A. THOMAS
Assistant U.S. Attorney


USA v. Chandra Pounds, et al.
Memo of Plea Agreement
Cr. No. 05-00190 JMS